UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DERRICK LAKE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:18-cv-143 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| BOARD OF COUNTY COMMISSIONERS | : | |
| OF CLARK COUNTY, OHIO, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ENTRY AND ORDER GRANTING DEFENDANTS CLARK COUNTY BOARD OF COMMISSIONERS AND CLARK COUNTY SHERIFF'S DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT (DOC. 26) AND TERMINATING THE CASE**

Pending before the Court is a Motion for Summary Judgment (the "Motion") filed by both remaining Defendants: the Board of County Commissioners of Clark County, Ohio ("County Board") and the Clark County Sheriff's Department ("Sheriff's Department" and, collectively, "Defendants"). (Doc. 26.) Plaintiff Derrick Lake ("Lake") filed a memorandum in opposition to the Motion (the "Response"). (Doc. 28.) Defendants filed a reply in support of the Motion (the "Reply"). (Doc. 29.) The Motion is fully briefed and ripe for review. For the reasons discussed below, the Court **GRANTS** the Motion and **TERMINATES** this case.

I.  **BACKGROUND**

Lake brings two counts against the Defendants[1] in his Complaint: (1) violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 - 12165; and, (2) violation

---

[1] Originally, the City of Springfield, Ohio and Clark County Municipal Court were also defendants in this case. On June 12, 2018 and August 27, 2018, respectively, Lake dismissed those two defendants without prejudice. (Docs. 9 and 18.)

1

of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. (Doc. 1.) He seeks compensatory damages, declaratory relief, attorney's fees, and costs. (*Id.*)

Lake was born deaf. He is fluent in American Sign Language ("ASL"). On the evening of February 15, 2018, Lake was arrested by the Springfield Police Department on an outstanding warrant. He was then transported to the Clark County Jail, where he arrived at approximately 6:00 p.m. Clark County deputy sheriff Shane Groves ("Deputy Groves") was working at the county jail at the time of Lake's arrival. Prior to starting the booking process for Lake, Deputy Groves was informed that Lake was deaf.

Deputy Groves wrote a note to Lake that asked Lake if he could read and write well. Lake wrote "Yeah." The note then states the following:

> Is this the <u>best</u> way, or do you need someone who does sign language?
> This is harder correct???
> OK. We can get one for you if you would want one.
> OK.
> Sign your name on the X.
> [signature of Lake]

Deputy Groves provided Lake with a medical screening questionnaire that is given to every inmate who enters the general population. Lake placed a slash over "no" in response to each of the questions on that questionnaire that required an inmate response.

Following Lake's communications with Deputy Groves, Clark County deputy sheriff Brad Barnhart ("Deputy Barnhart") also inquired as to Lake's ability to understand English. Deputy Barnhart wrote a note to Lake asking if Lake could wait until the morning to use an interpreter at court at 10:30 a.m. Deputy Barnhart wrote "Yes" and "No" on the note and pointed to those responses; Lake indicated that his answer was "Yes" (with that word being circled on the note), meaning that he could wait until morning for an interpreter.

At Lake's deposition in this case, the following exchanges took place, with Lake's answers

being provided through a sign language interpreter:

> Q. When you were here at the Clark County Jail last year, how did the corrections officers attempt to communicate with you?
>
> A. They wrote a note to me, they gave it back, some of the things I didn't understand because it's all in English.
>
> …
>
> A. Just to be honest, I was, you know, they asked me if I could read, I said yes; but a lot of this was just way over my head. I just, I didn't understand.
>
> Q. Let's take it one step at a time. The officers at the jail asked if you could read, and you told them yes?
>
> A. Yeah, they asked if I could read; and I said, yes; but some of the time, some of the English I don't always understand.
>
> …
>
> Q. Do you recall that the officers offered to get a translator for you?
>
> A. … [Y]eah, I wanted that; and they said, okay. And the man, he was like, damn, and he walked away. And then I was just waiting, and I was put off and put off. And the second one came; and then on the third page here, you know, like tomorrow morning for court, do you want an interpreter? And I was like, yes. That was the second time I said, yes, I needed the interpreter. Yeah, that's what I said, yeah. But they didn't show up, the interpreter didn't show up.
>
> …
>
> Q. When you were at the jail, you answered questions about your medical history, correct? …
>
> A. I was just going, no, no, no, no, no. I didn't know what it was. What did they say? I'm like nope, nope, nope, nope, nope. I just put down no. I didn't know what I was saying.
>
> Q. So it's your testimony that you answered the medical questions but you didn't understand them?
>
> A. No. Yeah, yeah, because there was nobody there to interpret for me. They just put it down and I just filled it out and went ahead with it.
>
> Q. Why did you answer if you didn't understand?

    A. Because that man was like fill it out, fill it out, fill it out. And I was like, okay, I can fill it out, so I did.

(Doc. 25 at PAGEID # 113-118.)

At the county jail, Lake was issued the same items that any other inmate would have received, including a blanket, mattress, hygiene items, and jail clothing. He also was offered food and took a shower. He was placed in a pod with other inmates, and he had his own cell (as did the other inmates on that pod). No interpreter was provided to Lake at the county jail. Lake was released from the jail following a court hearing the next morning (February 16, 2018) at approximately 11:15 a.m. According to the Defendants, Lake did not conduct any discovery in this case.

## II.    <u>LEGAL STANDARDS FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that

there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.  *Anderson*, 477 U.S. at 255.  However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.  "There must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.  The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).  The Court relies on the Rule 56 evidence called to its attention by the parties.  *See* Fed. R. Civ. P. 56(c), (e).

### III. ANALYSIS

In the Motion and Reply, Defendants make five arguments.  (*See* Docs. 26 and 29.)  First, they argue that the Sherriff's Department is not an entity capable of being sued.  Second, they argue that the Rehabilitation Act claim fails as a matter of law because there is no evidence that

5

the "program or activity" at issue receives federal funding. Third, they argue that Lake was not discriminated against. Fourth, they argue that, even if Lake was discriminated against (which they deny), he cannot recover compensatory damages because there is no evidence of <u>intentional</u> discrimination. Fifth, they argue that, even if Lake was intentionally discriminated against by Deputy Groves and Deputy Barnhart (which Defendants deny), the County Board cannot be held vicariously liable for such conduct in these circumstances.

Lake does not address Defendants' first, second, or fifth arguments in his Response. (Doc. 28.) Lake's Response also does not address whether the alleged discrimination was intentional. Instead, the Response argues that Lake was discriminated against under the ADA because the Defendants "failed to make reasonable accommodations [i.e., provide him with an interpreter during his detention at the Clark County Jail], and in fact, failed to make any accommodation whatsoever, for Lake's hearing impairment, thereby deny [sic] equal access under the" ADA and Rehabilitation Act. (*Id.* at PAGEID # 195.)

### A. Lake's Claims Against the Sheriff's Department Fail Because the Sheriff's Department is Not Capable of Being Sued for the Claims Asserted

Defendants argue that the Sheriff's Department should be dismissed from the case because it is not a legal entity capable of being sued. (Doc. 26 at PAGEID # 154.) Lake failed to respond to this argument, and the Court finds that Defendants' cited authority supports their position. *See, e.g., Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("[t]he district court explained that the Cuyahoga County Sheriff's Department is not *sui juris*, and therefore the claims against it should be dismissed. Plaintiff did not argue to the contrary before the district court … [and,] as the district court correctly noted, federal courts have held that, under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued. … Therefore dismissal of the claims against the Cuyahoga County Sheriff's Department was proper"); *Ebbing v. Butler Cnty.*,

6

*Ohio*, No. 1:09-cv-39, 2009 U.S. Dist. LEXIS 125029, at *8, 2010 WL 596470 (S.D. Ohio Oct. 28, 2009) (collecting cases) (recommending that plaintiff's motion to amend the complaint to add a county sheriff's department as a defendant be denied because "Ohio and federal courts agree that a county sheriff's department is not *sui juris*"), *report and recommendation adopted by* 2010 U.S. Dist LEXIS 13233, 2010 WL 596470 (S.D. Ohio Feb. 16, 2010). *See also Jackson v. Adult Parole Authority*, No. 1:19-cv-2339, 2020 U.S. Dist. LEXIS 23120, at *5, 2020 WL 639187 (N.D. Ohio Feb. 11, 2020) (dismissing ADA claim and holding that the county sheriff's office was not a proper party to the action because it is "not *sui juris*, meaning [it is] not [a] separate legal entit[y] under Ohio law that can sue or be sued"); Fed. R. Civ. P. 17(b) (indicating law to be applied in determining capacity to sue or be sued).

### B. Lake's Rehabilitation Act Claim Against the County Board Fails Because There is No Evidence that the Relevant Program or Activity Received Federal Funding

As noted above, Lake brings a claim against the County Board under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. 1.) That statute states, in relevant part, the following: "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794(a). The Sixth Circuit has held that:

> A cause of action under section 504 comprises four elements: (1) The plaintiff is a 'handicapped' [disabled] person under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap [disability]; and (4) The relevant program or activity is receiving Federal financial assistance.

*Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030-31 (6th Cir. 1995) (alterations in

7

original[2]) (internal quotation marks omitted) (emphasis added). The main case relied on by Lake in his Response (*McBride*) recognizes the requirement that the relevant program or activity receive federal funding. *McBride v. Mich. Dep't of Corr.*, 294 F. Supp. 3d 695, 704, 2018 U.S. Dist. LEXIS 40054, 2018 WL 1355323 (E.D. Mich. Feb. 8, 2018) ("Other than [Rehabilitation Act] Section 504's limitation to denials of benefits 'solely' by reasons of disability and its applicability only to entities that receive federal funds, the reach and requirements of" Section 504 and Title II of the ADA at 42 U.S.C. § 12132 "are precisely the same") (internal quotation marks omitted), *report and recommendation adopted by* 294 F. Supp. 3d 695, 2018 U.S. Dist. LEXIS 38809, 2018 WL 1224783 (E.D. Mich. Mar. 9, 2018).

Defendants argue that, "[b]ecause there is no evidence that the Clark County Jail, Clark County Sheriff's Office or Clark County, Ohio for that matter receives federal funds, Plaintiff's Rehabilitation Act must be dismissed." (Doc. 26 at PAGEID # 156.) Once again, Lake failed to respond to this argument, and the Court agrees with Defendants' argument and finds that Defendants' cited authority supports their position. *See, e.g., Ewbank v. Gallatin Cnty., Kentucky*, No. 03-156, 2006 U.S. Dist. LEXIS 1578, at *13-15 (E.D. Ky. Jan. 17, 2006) (granting county's motion for summary judgment on Rehabilitation Act claim where the plaintiffs failed to offer any proof that the defendant was a recipient of federal funds); *Nottingham v. Richardson*, 499 F. App'x 368, 376 (5th Cir. 2012) (affirming dismissal of Rehabilitation Act claim because the plaintiff "offered no evidence that the Randall County jail received federal funds, so the [Rehabilitation Act] is inapplicable to his claims"). As in *Ewbank*, Lake has not offered—or even attempted to offer—any evidence whatsoever that "[t]he relevant program or activity is receiving Federal financial assistance," an element of his claim. *Sandison*, 64 F.3d at 1030-31. The County Board

---

[2] The Sixth Circuit noted that, in 1992, the term "disability" was substituted for the term "handicap" in the statute. *Sandison*, 64 F.3d at 1030 n.1.

8

is entitled to summary judgment on Count II of the Complaint.

### C. Lake's ADA Claim Against the County Board Fails Because It Cannot be Held Vicariously Liable Under Title II of the ADA in the Circumstances Presented

The case of *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008), dealt with a claim similar to Lake's claim. In *Tucker*, the Sixth Circuit affirmed summary judgment in favor of two government entities on the claims of the plaintiffs—individuals who were allegedly deaf and mute—that the government entities failed to provide reasonable accommodation(s) under the ADA at their arrest, post-arrest detention, initial appearance, or disposition hearing. *Tucker*, 539 F.3d at 528-30. The court held that, in order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must prove that: (1) he has a disability; (2) he is otherwise qualified; and (3) he was being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program because of his disability.[3] *Id.* at 532. Additionally, "the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular." *Id.* (emphasis in original).

"If the plaintiff meets these requirements, then the burden shifts to the defendant to show that the accommodation provided was either effective, or that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden." *Tucker*, 539 F.3d at 532-33. The Sixth Circuit also noted that "the requirements of Title II [of the ADA] are subject to the bounds of reasonableness" and that "the federal regulations that have been promulgated to effectuate compliance by public entities make clear that the duty upon public entities is not absolute." *Id.* at 532.

---

[3] In *Tucker*, the third element included the word "solely" before the phrase "because of her [or his] disability." However, in *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1(6th Cir. 2015), the Sixth Circuit clarified that the test for intentional discrimination under Title II of the ADA does not require that the discrimination be "solely" because of the plaintiff's disability.

Lake argues that his claim is one concerning "reasonable accommodation" under the ADA.[4]  (Doc. 28 at PAGEID # 199 ("Lake's claim is … [that Defendants] fail[ed] to make a reasonable accommodation (i.e. [provide] an interpreter) during Lake's detention at Clark County Jail.").)  The Response states that "Lake alleges that [the County Board] failed to provide an ASL interpreter, or for that matter, any auxiliary aids, for Lake during the entirety of his detention at Clark County Jail between February 15, 2018 and February 16, 2018, despite Clark County employees' knowledge that Lake was Deaf and despite Lake's requests for an interpreter."  (Doc. 28 at PAGEID # 200.)  The Response concludes with the statement: "Thus, Lake satisfactorily alleges that Clark County failed to make a reasonable accommodation and states a claim under Title II of the ADA."  (*Id.*)  However, as set forth above, merely stating a claim is not the applicable standard on a motion for summary judgment.

The Response wholly fails to address Defendants' argument that, even if Deputy Groves and Deputy Barnhart intentionally discriminated against Lake (which they deny), the County Board cannot be vicariously liable for such conduct and Lake has not provided evidence to support a direct liability claim against the County Board.  (Doc. 26 at PAGEID # 160.)  Defendants cite a number of recent cases to support their argument that there is no vicarious liability under Title II of the ADA.[5]  The Court finds those cases, and Defendants' argument, persuasive.

---

[4] Under 42 U.S.C. § 12132 of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12131(2) defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

[5] *See* Doc. 26 at PAGEID # 160-61 and Doc. 29 at PAGEID # 204-05 (citing, for example, *Jones v. City of Detroit*, No. 17-11744, 2019 U.S. Dist. LEXIS 93018, at *13-17, 2019 WL 2355377 (E.D. Mich. June 4, 2019); *Hooper v. City of St. Paul*, No. 17-cv-3442, 2019 U.S. Dist. LEXIS 145084, at *23-32, 2019 WL 4015443 (D. Minn. Aug. 26, 2019) (deaf woman's claim against city for violation of Title II of the ADA due to allegedly failing to effectively communicate with her in context of her domestic-violence complaint and arrest failed); *Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1004-1008 (N.D. Ill. 2019)).  Based on these cases and Defendants' briefing, it is also the Court's understanding that the Sixth Circuit has not specifically addressed the issue.  *See Jones*, 2019 U.S. Dist.

The cases cited by the Defendants provide a thorough discussion and analysis to support their conclusion that a public entity cannot be held liable under Title II of the ADA. For example, the recent *Jones* case from the Eastern District of Michigan explains the ADA's remedial scheme and the relationship between the Rehabilitation Act, ADA, Title VI, and Title IX, finding that "the Supreme Court's decision to prohibit *respondeat superior* liability under Title IX extends to Title VI, which in turn extends to the Rehabilitation Act and the ADA because those statutes incorporate the remedies of Title VI by reference." *Jones*, 2019 U.S. Dist. LEXIS 93018, at *13-17. The court in *Jones* then explained that, therefore, the plaintiff's claim pursuant to Title II of the ADA does not survive because "Jones does not take issue with a municipal policy, practice, or custom. Instead, Jones seeks to hold the City liable under the ADA for its police officer's failure to reasonably accommodate him during his post-arrest transport." *Id.* A similar scenario is presented here.

Lake has not addressed Defendants' argument concerning vicarious liability, has not addressed any of the cases cited by the Defendants in support of their argument, and has not set forth evidence that would support a direct claim under Title II of the ADA against the County Board in light of the caselaw set forth by Defendants.[6] Among other things, none of Plaintiffs' cited evidence addresses any policy, practice, or custom; none identifies any prior incident; none addresses who knew of the alleged incident[7] and what authority those persons had; etc. The Court finds that the County Board is entitled to summary judgment on Count I of the Complaint.

---

LEXIS 93018, at *15 ("the issue of *respondeat superior* liability has not been addressed by the Sixth Circuit" in the context of a claim against a municipality under Title II of the ADA).

[6] The main case relied on by Lake in his Response (*McBride*) did not address the issue. *McBride* was a class action lawsuit brought by a class of deaf individuals in the custody of the Michigan Department of Corrections who required hearing-related accommodations for various reasons; the plaintiffs sought only declaratory and injunctive relief to remedy alleged violations of the ADA, Rehabilitation Act, Religious Land Use and Institutionalized Persons Act, and Free Exercise and Free Speech Clauses of the First and Fourteenth Amendment. *McBride*, 294 F. Supp. 3d at 697-98, 2018 U.S. Dist. LEXIS 38809.

[7] The Response uses the terms "jail personnel" and "officers."

## IV. CONCLUSION

In summary, the Court agrees with Defendants' first, second, and fifth arguments in their Motion. The Court neither condones nor condemns the specific conduct at issue. Instead, the Court simply finds that there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law, on the claims against them.[8]

For the reasons stated above, the Court **GRANTS** Defendants Clark County Board of Commissioners and Clark County Sheriff's Department's Motion for Summary Judgment (Doc. 26). Given that there are no viable claims remaining, this case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, March 11, 2020.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[8] The Court does not reach Defendants' additional arguments concerning whether Lake was discriminated against and whether, even if Lake was discriminated against (which Defendants deny), he cannot recover compensatory damages because there is no evidence of intentional discrimination.